FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Western Division

97 FEB 11 AM 9: 28

U.S. DISTRICT COURT
N.D. OF ALABAMA

VERLIE MADDOX,  )
    Plaintiff(s);  )
    )
-vs.-  )    No. CV-95-P-1550-W
    )
SPILLER FURNITURE,  )
    Defendant(s).  )

FEB 1 1 1997

## OPINION

    The defendant's Motion for Summary Judgment was considered at a prior motion docket. For the reasons expressed below, this motion is due to be granted in part and denied in part.

### Facts[1/]

    The plaintiff, Verlie Maddox, was born on May 27, 1927, and began working for the defendant, Spiller Furniture Co., in January of 1979. After several months, she began working as a credit collector in the central office, under Arnold Ladiner, the general credit manager. When Ladiner retired, Leonard Donahue, the Vice President and Chief Operating Officer of Spiller Furniture, told Maddox that she was the new credit manager. Maddox was no longer required to fill out a time card, took over Ladiner's desk, began reporting on the status of her department at managers' meetings, and conducted performance evaluations of a subordinate employee. Ms. Maddox's title was reported as general credit manager in a newspaper release provided by Donahue. In September, 1993, Jan Emfinger was hired as general credit manager. Emfinger was 42 at the time. When Maddox asked why she was being replaced by Emfinger,

---

1. The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the plaintiff.

Donahue stated that Maddox had never been general credit manager and that the position had been open since Ladiner retired. Emfinger became Maddox's supervisor, and Maddox was required to fill out a weekly time card, as she had done before. After Emfinger was hired, Maddox received no more raises.

In early 1994, Daphne Wilson, 40 years of age, was transferred to the central office from Spiller's Quality Store. She was not required to fill out weekly time cards. When Maddox asked why, Donahue told her that Wilson did not have to fill out a time card because she was going to be made assistant manager. The next day, Donahue stated that he would not name Wilson assistant manager because he did not want an age discrimination suit.

In August 1994, Donahue asked Maddox if she would transfer to another store and she refused. Donahue asked another employee on one occasion when he thought Maddox would retire.

In late 1994, Emfinger commented to Wilson that she would get Maddox out of the office somehow. Around December 26, 1994, Emfinger told Maddox that at her age she needed to retire and get away from the office. In January 1995, Emfinger gave Maddox her annual performance evaluation, which contained several unfavorable marks and comments. When Emfinger gave Maddox the evaluation, Emfinger commented that she had thought Maddox was going to retire, but since she hadn't retired Emfinger had to give her the bad evaluation.

On February 7, 1995, Donahue and Larry Spiller called Maddox into a meeting, in which they asked her to transfer to the Quality Store to help in a crisis situation regarding handling of

2

customer accounts.[2] Maddox expressed to the two men that she thought they were trying to get rid of her and asked them why Wilson, who had previously worked in the Quality Store, could not transfer instead. They replied that they felt that she (Maddox) was the most qualified person to deal with the situation, and asked her to take a temporary transfer to the Quality Store. The transfer did not involve a drop in benefits or a cut in pay. Maddox refused because, as she testified later, she believed that the transfer was an attempt to get rid of her. When Maddox refused the transfer, Spiller and Donahue decided that they would have to terminate Maddox if she persisted in her refusal because she had refused to perform a work assignment, and because her refusal was an affront to Spiller's ability to run the business and would send the wrong message to other employees. Spiller and Donahue met with Maddox on February 8, 1995, and, after she persisted in her refusal to transfer to the Quality Store, terminated her employment. Maddox was replaced by a woman approximately twenty-five years old.

Spiller Furniture has no written policy delineating terminable offenses. However, in the transcript of the meeting and in her deposition Maddox agrees that it is management's prerogative to decide where a particular employee would be most useful. Spiller Furniture has never retained any other employee who has refused to perform his or her work assignment. After Maddox's termination, Spiller challenged her efforts to receive unemployment compensation. Spiller did not challenge the unemployment compensation of Jill Chambers, who had been terminated from the Quality Store in connection with the customer account balance crisis.

On June 16, 1995, Maddox filed this lawsuit. In her complaint, she alleges that Spiller

---

2. Maddox states in her brief that she was not informed of the nature of the crisis at the time. However, Maddox secretly taped the conversation, and that secret tape of the conversation indicates that Donahue and Spiller clearly identified the crisis as a problem with customer account balances.

3

Furniture discriminated against her due to her age in discharge, promotions, demotions, transfers, job evaluations, job assignments, compensation, benefits, and terms and conditions of employment, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34.

## Analysis

In its Motion for Summary Judgment, the defendant argues that the plaintiff has made only a termination claim, because in her deposition she indicated she was complaining only about her termination. The defendant argues that the plaintiff has not made out a prima facie case of discrimination regarding her termination because she admits that she violated a work rule and cannot identify any younger employee who was retained by the company after violating a work rule. If the plaintiff is held to have established a prima facie case, the defendant argues that she cannot demonstrate pretext, for the same reason. In addition, the defendant argues that a temporary transfer, without a change in pay or benefits, is not actionable as a constructive discharge or adverse employment action.

The plaintiff argues that she should not be limited to a termination claim because her complaint states broader causes of action, and the complaint and the plaintiff's deposition testimony together put the defendant on notice of her claim that the terms and conditions of her employment prior to her termination were discriminatory. The plaintiff concedes that she cannot bring a claim based on her alleged demotion.

Regarding her termination claim, the plaintiff argues that she has established a prima facie case because she has shown that she is a member of a protected class, that she was terminated, that she was replaced by a person outside the protected class, and that she was qualified for her former

4

position. The plaintiff argues that past discriminatory history indicates that the defendant's stated reason for her termination is pretextual. Specifically, the plaintiff relies upon her alleged demotion, disparate treatment between the plaintiff and Wilson, two age-related comments by Donahue, and three age-related comments by Emfinger, one of which was made in conjunction with an unfavorable performance review. The plaintiff contends that these and other actions, beginning in September 1993, and lasting until February 1995, combine to form a concerted plan by the defendant to force her out of her job. The plaintiff alleges that the defendant continued the discrimination by challenging her unemployment compensation, while not challenging the unemployment compensation given to a younger person.

### I. Termination

To establish a prima facie case of discriminatory termination under the ADEA, the plaintiff must show that she belongs to the protected group, was qualified for the job, was discharged, and was replaced by a person outside the protected group. *Anderson v. Savage Laboratories, Inc.*, 675 F.2d 1221, 1224 (11th Cir. 1982). If the defendant articulates a nondiscriminatory reason for the termination, the burden then shifts back to the plaintiff to show that the defendant's articulated reason is pretextual. *Id.* In the context of discharge for violation of a work rule, the plaintiff may demonstrate pretext by showing that she did not violate the work rule, that other employees not in the protected class engaged in similar conduct and were not similarly treated, or by presenting other evidence of pretext. *Id.*; *Stewart v. Miller Brewing Co.*, 708 F.2d 655, 656-57 (11th Cir. 1983).

Maddox has failed to demonstrate that the defendant's stated reason for her termination was pretextual. It is undisputed that she refused to perform a temporary assignment at the Quality

5

Store that involved no reduction in pay or benefits. She conceded that, although there was no written rule covering this situation, Donahue and Spiller could assign employees where they felt the employees were most needed. It is also undisputed that no other employee was retained after refusing to perform a work assignment in a similar situation.

Although the plaintiff testified that she believed that the transfer to the Quality Store was meant to drive her out of her job, she can point to no statements made by Donahue or Spiller, the two decision makers, that would indicate that they ever had transferred or ever intended to transfer an employee for this purpose, or that they considered older employees to be undesirable or inferior. Maddox does not contend that Spiller made any comments regarding her age. She has identified two statements by Donahue that referred to age. On one occasion, in early 1994, Donahue stated that he would not promote Wilson to assistant manager because he did not want an age discrimination claim. Donahue also asked another employee when Maddox was planning to retire. As well, Donahue apparently promoted Maddox, then demoted her four years later when he hired Emfinger, a younger woman. These isolated comments and incidents do not rise to the level of demonstrating that the defendant's stated reasons for the plaintiff's termination were pretextual.[3]

## II.     Terms and Conditions of Employment[4]

Maddox argues that she was subjected to a pattern of age discrimination designed to force

---

3. To support her argument that the defendant's stated reasons were pretextual, Maddox also relies upon Emfinger's statement that she thought Maddox was going to retire, and that Emfinger had to give Maddox a bad performance review because she hadn't retired. However, Emfinger took no part in the decision to terminate Maddox, and Donahue and Spiller did not rely in their decision upon Maddox's past work performance.

4. The defendant argues Maddox should be limited to pursuing her termination claim because she stated in her deposition that her only claim of discrimination was based on her termination. However, because the plaintiff alleged specific facts in her complaint regarding claims other than her termination, and because the plaintiff's full deposition is not before the court, the court will consider all of the claims Maddox alleged with specificity in her complaint.

6

her into retirement, beginning with her demotion. She first points to two comments by Donahue and three comments by Emfinger to demonstrate that she worked in an environment that encouraged or condoned bias on the basis of age. The ADEA does support claims for constructive discharge based on harassment designed to force retirement. *See Stamey v. Southern Bell Telephone and Telegraph Co.*, 859 F.2d 855, 859-62 (11th Cir. 1988); *Lewis v. Federal Prison Industries, Inc.*, 786 F.2d 1537, 1538-43 (11th Cir. 1986). However, the comments complained of by the plaintiff are not so numerous or offensive as to rise to that level.

Maddox also argues that the poor performance evaluation given to her by Emfinger was prompted by age discrimination.[5] To establish a prima facie case of age discrimination under the ADEA, the plaintiff must "demonstrate 'facts sufficient for a reasonable jury to infer that discrimination has occurred.'" *Anderson*, 675 F.2d at 1223-24 (quoting *McCorstin v. United States Steel Corp.*, 621 F.2d 749, 754 (5th Cir. 1980)). Maddox has alleged that Emfinger told her directly that she was being given a poor performance evaluation because she refused to retire. In the absence of any contrary evidence by the defendant, the plaintiff has alleged sufficient facts for a jury to infer that discrimination occurred.

## Conclusion

The defendant's Motion for Summary Judgment is hereby GRANTED IN PART and DENIED IN PART. The defendant's Motion for Summary Judgment is granted as to the plaintiff's termination claim, because the plaintiff has not demonstrated that the defendant's reasons for her termination were pretextual. As well, the defendant's Motion for Summary

---

5. Maddox also complains that Spiller Furniture chose to challenge her unemployment compensation, and did not choose to challenge the unemployment compensation of Chambers. As Maddox does not state these facts in her complaint, the court will not consider the challenge to unemployment benefits as grounds for a separate cause of action.

Judgment is granted as to any claim the plaintiff makes regarding a discriminatory environment, because the plaintiff's allegations to not establish a prima facie case. The defendant's Motion for Summary Judgment is denied as to the plaintiff's claims regarding her poor performance evaluation, because the plaintiff has presented evidence sufficient to allow a jury to conclude that discrimination occurred.

Dated: February 10, 1997

Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. Michael Quinn
    Mr. Kyle T. Smith
    Ms. Amelia H. Griffith
    Mr. David J. Middlebrooks
    Mr. Albert L. Vreeland, II